IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TONYA Y. BOZEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-00350-CV-W-WBG |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION REVERSING THE ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff Tonya Y. Bozeman's appeal of Defendant Acting Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income. For the following reasons, the Acting Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings.

### I. BACKGROUND

Plaintiff was born in 1963, and the highest level of education she has obtained is some college. R. at 30, 196, 205, 251. Her past relevant work includes telephone solicitor, collections clerk, and travel agent. R. at 17, 30-32, 40-41, 93. In May 2018[2] and May 2019, Plaintiff protectively filed for disability insurance benefits and supplemental security income, respectively, alleging she became

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, who was appointed as the Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] The disability insurance benefits application submitted to this Court was filed in May 2018. R. at 196-202. However, the administrative law judge's September 2020 decision and Defendant's brief indicate Plaintiff protectively applied for disability insurance benefits in May 2019. R. at 10, 17; Doc. 16 at 3. Thus, it is unclear if the wrong application was provided to the Court, or the ALJ and Defendant were mistaken. Regardless of which occurred, the application date is inconsequential to the Court's review of this matter.

disabled on March 17, 2018.[3]  R. at 10, 196-202, 205-15.  Her applications were denied, and she requested a hearing before an administrative law judge ("ALJ").  R. at 10, 113-17, 120.

In August 2020, ALJ Robert Kelly conducted a hearing during which Plaintiff and a vocational expert ("VE") testified.  R. at 25-45.  On September 28, 2020, the ALJ issued his decision.  R. at 10-18.  Therein, he concluded Plaintiff's severe impairments are "Sjogren's syndrome, systemic lupus erythematosus, fibromyalgia, and osteopenia."  R. at 13.  Relevant to this appeal, the ALJ determined Plaintiff's mental impairments of depression, adjustment disorder, and anxiety are not severe.  R. at 13-14.  The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following additional limitations:

> The claimant can lift and carry 10 pounds occasionally and 10 pounds frequently; can stand/walk for 2 hours in an 8-hour workday; can sit for 8 hours in an 8-hour workday; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs.  The claimant can frequently, but not constantly, perform gross handling and fine fingering with either upper extremity.  She can avoid ordinary workplace hazards, but should have no exposure to unprotected heights or dangerous unguarded machinery.  She cannot have more than occasional exposure to extremes of heat, cold, humidity, or wetness. She cannot use power tools.  She cannot have more than occasional exposure to vibrating tools or machinery.

R. at 15.  Based upon his review of the record, his RFC determination, and the VE's testimony, the ALJ concluded Plaintiff could perform her past relevant work as a telephone solicitor, collections clerk, and travel agent.  R. at 17.  The ALJ found Plaintiff was not disabled .  R. at 18.  Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied her appeal.  R. at 1-3, 193-95.  Plaintiff now appeals to this Court.  Doc. 3.

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were

---

[3] Plaintiff later amended her disability onset date to April 18, 2019.  R. at 10, 29.

applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)). In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the court must affirm. *See id.*

### III. DISCUSSION

Plaintiff argues this matter should be remanded because the ALJ improperly assessed the severity of her mental impairments.

### A. Standard for Step Two Determination

When determining whether an individual is disabled, the ALJ follows a five-step process. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step two, which is at issue in this matter, the ALJ determines whether the individual has an impairment or combination of impairments that is "severe." *Id.* §§ 404.1520(c), 416.920(c).[4] An impairment or combination of impairments is considered "severe" if it

---

[4] If an impairment is not "severe," the claimant will be found not disabled, and the analysis will not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

"significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citation omitted) (noting a slight abnormality not "significantly" limiting one's "ability to do basic work activities" is not severe); *Householder v. Bowen*, 861 F.2d 191, 192 n.1 (8th Cir. 1988) (citations omitted). Basic work activities are "abilities and aptitudes necessary to do most jobs," which include physical functions; capacity to see, hear, and speak; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

While a claimant has the burden of establishing her impairment or combination of impairments is severe, the burden is "not great." *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001); *see also Kirby*, 500 F.3d at 707 (observing severity "is not an onerous requirement for the claimant to meet."). In fact, the Social Security Administration directs ALJs to exercise "[g]reat care" when "applying the not severe impairment concept" and deciding whether an individual's impairment or combination of impairments is severe. Titles II & XVI: Med. Impairments That Are Not Severe, SSR 85-28, 1985 WL 56856, at *4 (1985). Thus, if an ALJ "is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities," the ALJ should not end the sequential evaluation process at step two. *Id.*; *see Gilbert v. Apfel*, 175 F.3d 602, 605 (8th Cir. 1999) (finding "contradictory evidence" in the record did not support the ALJ's decision to stop at step two).

**B.     The ALJ's Step Two Determination**

At step two, the ALJ noted the record revealed Plaintiff "has a history of depression and adjustment disorder." R. at 13. But he found Plaintiff's "depression and anxiety" did not have more than a "minimal effect" on her ability to do basic work activities, and thus, were not severe. *Id.* (noting her impairments resulted in "no more than <u>mild</u> limitations with understanding, remembering,

4
Case 4:21-cv-00350-WBG   Document 20   Filed 08/31/22   Page 4 of 12

or applying information; <u>mild</u> difficulties in interacting with others; <u>mild</u> difficulties in maintaining concentration, persistence, or pace; and <u>mild</u> difficulties adapting and managing oneself." (emphasis in original)). In making his non-severity determination, the ALJ referenced portions of two mental status examinations, a portion of the Plaintiff's Function Report, and medical opinions from Steven Akeson, Psy.D., and Carol Huhs, LCSW. R. at 13-14. Plaintiff argues the documents upon which the ALJ relied in reaching his determination do not constitute substantial evidence, and therefore, this matter must be reversed and remanded. Doc. 13 at 8-16.

**(1) Mental Status Examinations**

The ALJ referenced six pages of records from mental status examinations conducted in January 2019 and May 2020 at ReDiscover. R. at 13 (citing C3F/11-13 (R. at 396-98) and C12F/22-24 (R. at 692-94)). The ALJ indicated the examinations demonstrate Plaintiff "has intact orientation, normal attention, normal speech, intact recent and remote memory, average general information, fair insight, and intact judgment" *Id*. While he correctly identified portions of the mental status examinations, the ALJ ignored other parts and failed to consider other records from the same visits. For example, both mental status examinations revealed Plaintiff's insight was "fair" (as opposed to "good"). R. at 398, 694. In addition, the January 2019 examination indicated she has memory problems due to stress, and the May 2020 examination revealed she had thoughts of hopelessness. R. at 398, 692. The ALJ did not discuss this additional information.

Other documents related to the January 2019 and May 2020 appointments provide more details about Plaintiff's mental health impairments. On the July 2019 Intake Questionnaire, Plaintiff stated she sought services from ReDiscover for "depression, anxiety, mood swings." R. at 387. In her Patient Health Questionnaire – 9 ("PHQ-9"), Plaintiff reported that nearly every day during the preceding two weeks she had little to no interest or pleasure in doing things and felt bad about herself.

R. at 395. She also indicated she felt down, depressed, hopeless, and had trouble concentrating more than half the days during the previous two weeks. *Id*. She received a PHQ-9 score of 18.[5] *Id*.

On the May 2020 Intake Questionnaire seeking additional mental health treatment, Plaintiff reported she "is still having depression." R. at 682. Her May 2020 PHQ-9 specified that nearly every day over the past two weeks she had little to no interest or pleasure in doing things and had difficulty concentrating. R. at 691. Additionally, during more than half the days during the past two weeks, she felt bad about herself. *Id*. Her PHQ-9 score was 17. *Id*. These other documents related to the January 2019 and May 2020 appointments, however, are not discussed by the ALJ.

**(2)      Plaintiff's Function Report**

As the ALJ explained, Plaintiff's Function Report indicates she shops, goes out alone, and manages her own finances. R. at 13 (citing C4E (R. at 256-66)). But her Function Report also details significant limitations with the activities of shopping and going out alone. Plaintiff indicates she only shops for ten to fifteen minutes, and for the most part, she does not drive and sits in the car while her significant other does "most of the driving and shopping." R. at 259.[6] These limitations are disregarded by the ALJ.

The Function Report provides additional information about Plaintiff's other activities of daily living and limitations related thereto. For example, when asked how often she participated in her hobbies and interests, Plaintiff says she does "nothing but go to doctors['] appointments and see therapist." R. at 260. She also indicates she needs reminders to take care of grooming and personal needs, is unable to prepare meals, cannot perform house or yard work, has memory difficulties, does not follow spoken instructions well, does not handle stress well, and is "okay with" routine changes

---

[5] "The PHQ-9 is used to screen, diagnose, monitor, and measure the severity of depression." *Walker v. Kijakazi*, No. 6:21-cv-3235-NKL, 2022 WL 3036639, at *6 n.2 (W.D. Mo. Aug. 1, 2022) (citation omitted). A PHQ-9 score of 15 to 19 represents "moderately severe depression." *Id*.

[6] This is also consistent with the medical records from ReDiscover in which Plaintiff indicated she "could not live independently without her spouse." R. at 389.

if she has advance notice. R. at 258-59, 261-62. She notes she requires assistance getting dressed, bathing, and getting on and off the toilet. R. at 257. Although the ALJ relied on a small portion of the Function Report, he did not discuss or address these additional limitations. *See* R. at 13.

### (3) Opinion of Steven Akeson, Psy.D.

The ALJ also relied on Dr. Steven Akeson's September 5, 2019 opinion. R. at 14. Dr. Akeson was a non-examining state agency psychologist who conducted a review of the available medical records. R. at 88-89. Dr. Akeson opined Plaintiff's impairment of "trauma- and stressor-related disorders" is non-severe, but he found Plaintiff is mildly limited in her ability to understand, remember, and apply information, and in her ability to concentrate, persist, or maintain pace. R. at 88, 101. His opinion was based on the January 2019 appointment discussed above and "[e]xams from PCP" from March 2018 to June 2019. R. at 88-89, 101-02.

The records from Plaintiff's "PCP," or primary care physician, upon which Dr. Akeson relied, reveal her chief complaints were, *inter alia*, joint and limb pain, Sjogren's disease, Reynaud's phenomenon, vitamin deficiency, and chest abscess. R. at 413-567, 575-607. As noted by Dr. Akeson, the records generally reflect observations by medical professionals that Plaintiff was alert and oriented, had appropriate mood and affect, and was cooperative during these appointments. But the records provide no indication that Plaintiff discussed her mental health condition (positively or negatively) with any of the six different doctors she saw during these eleven appointments. R. at 413 (Dr. Barnett), 420 (Dr. Barnett), 442 (Dr. DeMarco), 446 (Dr. DeMarco), 457 (Dr. Foote), 476 (Dr. DeMarco), 490-91 (Dr. Foote), 514 (Dr. DeMarco), 532 (Dr. Anderson), 552 (Dr. Carey), 576 (Dr. Ifteqar).

Dr. Akeson's opinion was also based on Plaintiff's failure to seek "regular treatment or medications for mental health" and the lack of "ER visits or psychiatric hospitalizations." R. at 88-89, 101-02. Although issued in September 2019, his opinion does not reference any records from

ReDiscover after January 2019. *See* R. at 88-89, 101-02. This is significant because Plaintiff began therapy in March 2019. R. at 652, 658. During that appointment, she reported suffering from anxiety and depression for four to five years, experienced "significant anxiety," and her daily functioning was "extremely difficult." *Id.* Additional therapy sessions occurred in April 2019 and July 2019 prior to the issuance of Dr. Akeson's opinion.[7] R. at 648-49, 654, 659-60, 739-40. Records from the three therapy appointments that occurred prior to September 2019 are not referenced in Dr. Akeson's opinion.

The ALJ found Dr. Akeson's opinion persuasive because it was supported with "specific mental status examinations" and "consistent with the claimant's intact orientation, normal attention, normal speech, intact recent and remote memory, average general information, fair insight, and intact judgment." R. at 14. Although he found the opinion persuasive, the ALJ did not address Dr. Akeson's opinion that Plaintiff was mildly limited in her ability to understand, remember, and apply information, and concentrate, persist, or maintain pace. *See id.*[8] Also absent from the ALJ's decision is an explanation as to why Dr. Akeson's opinion, which is based in part on Plaintiff not seeking mental health treatment, is persuasive even though the record reveals she sought mental health treatment. Likewise, the ALJ did not acknowledge Dr. Akeson's opinion predated Plaintiff's continued participation in therapy from September 2019 to January 2020.[9] Finally, the ALJ did not account for Dr. Akeson's opinion being issued more than a year before the ALJ rendered his decision. R. at 10-18, 88-89, 101-02.

---

[7] Plaintiff also attended therapy sessions with ReDiscover after Dr. Akeson issued his opinion. *See* R. at 661-65.

[8] Additionally, the ALJ did not incorporate these mild limitations in the RFC. *See* R. at 15.

[9] The ALJ was aware of Plaintiff's participation in therapy. In addition to the medical records, Plaintiff testified at the hearing that she talks "to a therapist about what's going on with me." R. at 36.

### (4) Opinion of Carol Huhs, LCSW

The ALJ discussed but did not rely on an opinion from Carol Huhs, LCSW. R. at 14. On November 5, 2019, Huhs, who was Plaintiff's therapist, executed a Medical Source Statement – Mental ("MSSM"). R. at 617-18. In January 2019, Huhs first met Plaintiff when she sought mental health treatment at ReDiscover. R. at 400. During their meeting, Plaintiff reported worrying "a lot" and becoming depressed since she stopped working. R. at 400. In April 2019, Plaintiff met with Huhs for individual therapy. R. at 654, 659. During this appointment, Plaintiff said she gets "very upset and agitated," needs "to deal with grief," "worries a lot," and wants to "get out of the funk that I have been in." R. at 654. She identified Sjogren's disease and depression as her "limitations and problems." *Id*. Before issuing the MSSM, Huhs met with Plaintiff for individual therapy on five occasions. R. at 654, 659-63.

In the MSSM, Huhs opined Plaintiff was markedly limited[10] in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. at 618. She also found Plaintiff was moderately limited[11] in her abilities to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine; work in coordination with or proximity to others; complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. R. at 617-18. Huhs also opined Plaintiff's symptoms would cause her to be off task fifteen percent of the workday and miss three days of work per month. R. at 617. Her opinion was based on

---

[10] "Markedly limited" is a limitation that "seriously interferes with the ability to function independently." R. at 617.

[11] "Moderately limited" is an impairment level "compatible with some, but not all, useful functioning." R. at 617.

clinical findings and Plaintiff's diagnoses of depressed mood and adjustment disorder with mixed anxiety. *Id*.

The ALJ found Huhs's opinion unpersuasive because she "did not adequately support her opinion with abnormal mental status examinations," and "her opinion is inconsistent with the balance of the medical record evidence which reflects . . . intact orientation, normal attention, normal speech, intact recent and remote memory, average general information, fair insight, and intact judgment." R. at 14. The ALJ did not cite any portion of the record to support the bases for finding Huhs's opinion unpersuasive. *See id*.

## C. The ALJ Committed Error at Step Two

The ALJ was obligated to exercise "great care" when "applying the not severe impairment concept" and deciding whether Plaintiff's impairment or combination of impairments are severe. SSR 85-28, 1985 WL 56856, at *4. Moreover, the Social Security Administration directed the ALJ not to end the sequential evaluation process at step two if he was "unable to determine clearly the effect of" Plaintiff's impairments. *Id*. Instead, the ALJ relied on select portions of two mental status examinations, a part of Plaintiff's Function Report, and Dr. Akeson's opinion, which is incomplete, outdated, and contradictory to the record. R. at 13-14.

At a minimum, the record presented contradictory evidence of whether Plaintiff's impairments or combination of impairments were severe. Thus, the ALJ could not "determine clearly" the effect of Plaintiff's impairments and should have continued the sequential evaluation process. *See* SSR 85-28, 1985 WL 56856, at *4; *Gilbert*, 175 F.3d at 605. By concluding the analysis of Plaintiff's mental health impairments at step two, the ALJ, who failed to comply SSR 85-28, committed legal error.[12]

---

[12] Additionally, the Court finds substantial evidence in the record does not support the ALJ's conclusion that Plaintiff's mental impairments are not severe. *See supra*, section III(B).

10
Case 4:21-cv-00350-WBG   Document 20   Filed 08/31/22   Page 10 of 12

### D. The ALJ Committed Error When Determining Plaintiff's RFC

In addition to the error committed at step two, the ALJ erroneously determined Plaintiff's RFC. In his decision, the ALJ stated he "must consider all of the claimant's impairments, including impairments that are not severe," when determining Plaintiff's RFC. R. at 12 (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; and Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (1996)). However, when determining Plaintiff's RFC, the ALJ did not mention or discuss the impairments he found to be non-severe. *See* R. at 15-17. Significantly, although the ALJ found Dr. Akeson's opinion to be persuasive, the ALJ did not include Plaintiff's mild limitations in her ability to understand, remember, and apply information, and concentrate, persist, or maintain pace, as opined by Dr. Akeson. R. at 88, 101. By not considering Plaintiff's non-severe impairments when determining her RFC, the ALJ failed to comply with the applicable regulations and committed legal error.

### E. The ALJ's Errors Were Not Harmless

If an ALJ errs, reversal of the ALJ's decision is not required if the error was harmless. *See Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). "To show an error was not harmless, [Plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917. Plaintiff has demonstrated if her mental impairments had been properly considered and found severe and/or her RFC included limitations associated with her mental impairments, the ALJ would have decided this matter differently.

During the hearing, the ALJ and Plaintiff's counsel asked the VE if a hypothetical person with Plaintiff's RFC, as determined by the ALJ, would be precluded from all employment if she had to take frequent breaks resulting in her being off task at least fifteen percent of the workday, if she was twenty percent slower than the average worker, if she had to miss work three days per month, or if

11

Case 4:21-cv-00350-WBG   Document 20   Filed 08/31/22   Page 11 of 12

she responded inappropriately to changes in the work setting roughly thirty percent of the time. R. at 41-43. Regarding each additional proposed limitation, the VE testified the individual would be unable to maintain employment. *Id*. Accordingly, if the ALJ had determined Plaintiff's mental impairments were severe or had he incorporated limitations associated with her mental health impairments in the RFC, the ALJ likely would have found Plaintiff disabled. Thus, the ALJ's errors were not harmless.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the ALJ committed errors at step two of the sequential evaluation process and the RFC determination, and those errors were not harmless. Accordingly, the Acting Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: August 31, 2022  /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE